Parham v City of New York (2024 NY Slip Op 51360(U))

[*1]

Parham v City of New York

2024 NY Slip Op 51360(U)

Decided on October 2, 2024

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 2, 2024
Supreme Court, New York County

Dwayne Parham, Plaintiff,

against
The City of New York, THE NEW YORK CITY LAW DEPARTMENT, MICHAEL FINKELSTEIN, JOSEPH SEGRETI, LILLIAN EVANS, SOSIMO FABIAN, FAY LEOUSSIS, HOWARD EISON, JOHN ORCUTT, MURIEL GOODE-TRUFANT, JOHN DOES, JANE DOES, Defendant.

Index No. 450008/2021

Plaintiff: Dwayne Parham (pro se)
Defendants: Bilal Haider, Esq. 

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 003) 33, 34, 35, 36, 37, 38, 40, 42, 43, 44, 45 were read on this motion for DISMISSAL.
Upon the foregoing documents and oral argument, the City of New York, the New York City Law Department, Michael Finkelstein, Joseph Segreti, Lillian Evans, Sosimo Fabian, Fay Leoussis, Howard Eison, John Orcutt, and Muriel Goode-Trufant (collectively identified as "Defendants") move to dismiss Plaintiff's amended complaint pursuant CPLR § 3211(a)(7) on the grounds that it does not comply with statutory notice of claim requirements and otherwise fails to state a cause of action. Plaintiff Dwayne Parham ("Plaintiff") opposes the motion. For the reasons stated herein, Defendants' motion is denied.
BACKGROUND
Plaintiff was hired by the New York City Law Department (the "Law Department") in May 2018 as a Claims Specialist in the Special Litigation Unit ("SLU") (NYSCEF Doc No. 27, verified amended complaint ¶ 19).[FN1]
Plaintiff is a black male who holds a Juris Doctorate (id. ¶¶ 17, 18). Beginning in July 2018, Plaintiff alleges that he was subjected to racially motivated comments and actions by supervisors within the Law Department (id. ¶ 21). Specifically, Plaintiff claims that Senior Counsel Michael Finkelstein ("Finkelstein") made comments to Plaintiff about fried chicken, such as, "you know [Plaintiff] makes the best fried chicken" and "of course [Plaintiff] would be good at making fried chicken" (id. ¶ 9, 21, 23, 25). Finkelstein also professedly flapped his arms while making a clucking sound as he passed by Plaintiff's desk (id. ¶ 25). In October 2018, Plaintiff offered Finkelstein candy, to which Finkelstein allegedly responded by tossing a watermelon-flavored piece at Plaintiff and saying, "here is your favorite flavor" (id. ¶¶ 30-2). In November 2018, Finkelstein purportedly stood in the middle of Plaintiff and a black colleague and exclaimed, "hey what do we make [. . .] an Oreo" (id. ¶ 34). Additionally, Plaintiff claims that Finkelstein and Plaintiff's direct supervisor, Joseph Segreti ("Segreti"), called black people "lazy" and referred to support staff as "lint on a jacket" (id. ¶¶ 35, 42, 43, 44, 47). Senior Counsel Howard Eison ("Eison") also supposedly asked Plaintiff's coworker "who unshackled your chains so you can walk away from your desk" (id. ¶ 130).
Plaintiff alleges that he was denied mentorship and chastised in front of his colleagues (id. ¶¶ 53, 54, 66). Additionally, despite being hired as a Claims Specialist, Plaintiff claims he was asked to do more custodial tasks than his white colleagues (id. ¶¶ 67, 78, 128). Plaintiff was apparently asked to move heavy boxes and clean up the shredding area (id. ¶¶ 75, 78). When Plaintiff confronted Segreti about why he and the other black staff members were singled out to do these tasks, Segreti allegedly stated that they did not seem busy (id. ¶¶ 79, 81). Plaintiff was then called into the office of John Orcutt, Assistant Unit Chief of SLU and given an impromptu negative performance evaluation (id. ¶¶ 15, 83, 85).
On April 2, 2019, Plaintiff filed an internal complaint with Sosimo Fabian ("Fabian"), the Equal Employment Opportunity Officer ("EEO") and SLU Division Chief (id. ¶ 90). As a result, Finkelstein, Segreti, and Orcutt began including Fabian on emails to and from Plaintiff (id. ¶ 93). Finkelstein also allegedly stopped communicating with Plaintiff for over a month, and when he did communicate, Plaintiff claims that it was to make Plaintiff's job more difficult (id. ¶¶ 98, 99). On April 15, 2019, Plaintiff spoke to Lillian Evans ("Evans"), the Deputy Director of Legal Recruiting and Deputy EEO Officer, about additional instances of harassment (id. ¶ 100). Plaintiff also contacted the New York City Commission on Human Rights (the "NYCCHR") (id. ¶ 102). When Evans learned that Plaintiff contacted the NYCCHR, Evans purportedly told Plaintiff that "the law prohibit[ed] the continuation of the [Law Department's] internal investigation" because Plaintiff filed a complaint (id. ¶ 103).
Plaintiff filed additional internal complaints on May 30, 2019, October 10, 2019, and November 12, 2019 (id. ¶¶ 104, 149, 155). On May 31, 2019, Evans offered Plaintiff a position in the Special Federal Litigation Unit ("SFLU") (id. ¶¶ 105, 106). Plaintiff expressed concerns [*2]about being stigmatized and asked to be taken off Finkelstein's cases instead (id. ¶ 107). On June 3, 2019, Plaintiff formally declined the offer to be transferred to another department (id. ¶ 108). Despite Plaintiff's declination, on June 10, 2019, Evans allegedly told Plaintiff that the agency believed it was best to transfer Plaintiff (id. ¶ 114). Plaintiff started in the SFLU on June 13, 2019 (id. ¶ 141). Plaintiff's caseload was approximately ten to twenty times greater than it was in the SLU (oral argument of Plaintiff, August 20, 2024). In July 2019, word circulated about Plaintiff's complaints and all but one of the employees stopped speaking to Plaintiff, including the supervisors (id. ¶ 145). Additionally, while in SFLU, Plaintiff was purportedly referred to as intimidating, and his requests for a working laptop went unanswered for months (id. ¶¶ 129, 164). On May 29, 2021, Plaintiff was terminated (id. ¶ 166).
On July 11, 2019, Plaintiff filed a notice of claim with the New York City comptroller (NYSCEF Doc No. 35). Plaintiff commenced this action by filing a summons and complaint on November 13, 2019 (NYSCEF Doc No. 22). In lieu of an answer, Defendants moved to dismiss Plaintiff's complaint (NYSCEF Doc No. 3). Before a decision was issued on the motion to dismiss, Plaintiff served a motion for leave to amend his complaint (NYSCEF Doc No. 20). On June 30, 2022, the parties stipulated that Defendants would withdraw their motion to dismiss, Plaintiff would file an amended complaint by June 30, 2022, and Defendants would respond to the amended complaint by August 15, 2022 (NYSCEF Doc No. 26). Plaintiff served his amended complaint on June 30, 2022, and interposed causes of action for unlawful race discrimination under New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"), hostile work environment under NYSHRL and NYCHRL, retaliation under NYSHRL and NYCHRL, negligent hiring and supervision, and negligent/intentional infliction of emotional distress (NYSCEF Doc No. 27). On August 15, 2022, Defendants filed the instant motion to dismiss (NYSCEF Doc No. 33). The parties appeared for oral argument on August 20, 2024.
ARGUMENTS OF THE PARTIES
Defendants argue that Plaintiff's amended complaint must be dismissed because Plaintiff failed to comply with the statutory requirements governing the notice of claim and otherwise fails to state a cause of action upon which relief may be granted. Specifically, Defendants contend that Plaintiff cannot maintain a cause of action for negligent hiring and supervision because Plaintiff did not allege this cause of action in the notice of claim, and to the extent he did, because Plaintiff filed his notice of claim on July 11, 2019, it would only include those facts alleged between April 12, 2019, and July 11, 2019. Further, Plaintiff has not alleged facts between April 12, 2019 and July 10, 2019 that show Defendants acted outside the scope of their employment or that the employer knew or should have known of its employees' propensities to engage in discriminatory conduct. Defendants argue that Plaintiff cannot maintain a cause of action for negligent or intentional infliction of emotional distress because Plaintiff only pleaded that he wanted emotional distress damages, not that he was bringing a cause of action for negligent or intentional infliction of emotional distress. Finally, Defendants argue that Plaintiff failed to state a cause of action upon which relief may be granted because Plaintiff did not allege any adverse employment action, Plaintiff's allegations do not demonstrate an inference of discrimination and alternatively, to the extent that Plaintiff was subjected to racially motivated comments and actions, they were isolated.
In opposition, Plaintiff argues that his notice of claim does state causes of action for negligent hiring and supervision, and negligent or intentional infliction of emotional distress. Plaintiff also contends that the continuing tort doctrine brings in his factual allegations from before April 12, 2019, and after July 11, 2019. Lastly, Plaintiff reiterates that he has stated factual allegations sufficient to maintain causes of action for unlawful employment discrimination, hostile work environment, and retaliation under NYSHRL and NYCHRL.
DISCUSSION
On a motion to dismiss brought under CPLR §3211 (a) (7), the court must "accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994][citations omitted]). Ambiguous allegations must be resolved in the plaintiff's favor (see JF Capital Advisors, LLC v Lightstone Group, LLC, 25 NY3d 759, 764 [2015]). "The motion must be denied if from the pleadings' four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002][internal citations omitted]). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (Cortlandt Street Recovery Corp. v Bonderman, 31 NY3d 30, 38 [2018]), but a pleading consisting of "bare legal conclusions" is insufficient (Leder v Spiegel, 31 AD3d 266, 267 [1st Dept 2006], affd 9 NY3d 836 [2007], cert denied 552 US 1257 [2008]) and "the court is not required to accept factual allegations that are plainly contradicted by the documentary evidence or legal conclusions that are unsupportable based upon the undisputed facts" (Robinson v Robinson, 303 AD2d 234, 235 [1st Dept 2003]).
A. Race Discrimination
Turning to Plaintiff's discrimination claims, both the NYSHRL and the NYCHRL proscribe employment discrimination based on an individual's race (Executive Law § 296 [1] [a]; Administrative Code § 8-107 [1][a]). Claims brought under the NYSHRL and the NYCHRL are reviewed under notice pleading standards and must give "fair notice of the nature of the plaintiff's claims and their grounds" (Petit v Department of Educ. of the City of NY, 177 AD3d 402, 403 [1st Dept 2019]). Further, in light of the NYCHRL's "uniquely broad and remedial purposes[,]" claims under the NYCHRL should be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (Williams v NYC Hous. Auth., 61 AD3d 62, 66 [1st Dept 2009][internal citations and quotations omitted]; Albunio v City of New York, 16 NY3d 472, 477-478 [2011]).
i. NYSHRL
To plead a cause of action for employment discrimination under the NYSHRL, Plaintiff must allege: (1) he is a member of a protected class, (2) he was qualified to hold the position, (3) that he was terminated from employment or suffered adverse employment action, and (4) that the termination or adverse employment action occurred under circumstances giving rise to an inference of discrimination (Harrington v City of New York, 157 AD3d 582, 584 [1st Dept [*3]2018]).[FN2]
Adverse employment action is "a materially adverse change in the terms and conditions of employment . . . [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities" (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 306 [2004] [citation omitted]). A materially adverse change can include the "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation" (id.).
Here, Plaintiff states a cause of action for unlawful race discrimination under the NYSHRL. Plaintiff met his burden by pleading that he is a black male, was employed by the Law Department, received a favorable performance evaluation, had a material alteration of his job responsibilities, and was terminated (NYSCEF Doc No. 27, verified amended complaint ¶¶ 7, 20, 58, 60, 78, 86, 128, 166). Plaintiff's allegations that Finkelstein and Segreti called black people lazy, referred to support staff as "lint on a jacket," clucked at and subjected Plaintiff to unwanted comments about fried chicken, watermelon, and Oreos, are sufficient to raise an inference of discrimination (id. ¶¶ 21, 23, 25, 29, 31, 34, 35, 42). Defendants' argument that Plaintiff's amended complaint "largely consists of general workplace grievances without any factual connection to Plaintiff's race" is wholly without merit (NYSCEF Doc No. 10, memorandum at 18). Not only are Plaintiff's allegations specific and detailed, but they speak to a deeply historical invidious racial animus. The use of food, and particularly chicken and watermelon, to stigmatize and denigrate African Americans dates back to slavery and the postbellum era (see Burdick, John, Encyclopedia of Food and Agricultural Ethics, Race, Racial Identity, and Eating at 1577, https://food.unt.edu/documents/R.pdf [2014]["during this time, white Americans found ways to associate African Americans with certain foods, in particular chicken and watermelon, as a means to correlate blackness with inferiority [. . .] laziness, buffoonishness, and propensity for criminal activity"). Early entertainment often featured white performers in blackface eating chicken and watermelon to construct and perpetuate invidious and demeaning tropes (id. at 1578 ["Minstrel performances, vaudeville, film, and consumer [*4]culture utilized images of chicken and watermelon to produce a constant stream of anti-black imagery"]). The weaponization of food against African Americans is so ubiquitous that in 2014 then-President Barack Obama was featured in a cartoon with a white man asking if he had "tried the new watermelon flavored toothpaste" (Killough, Ashley, Boston Herald apologizes for Obama cartoon after backlash, CNN [Oct. 1, 2014], available at https://www.cnn.com/2014/10/01/politics/boston-herald-cartoon/index.html [last accessed Sept. 10, 2024]). On two occasions, once in 1997, and then again in 2013, famed golfer Tiger Woods was publicly subjected to comments about ordering fried chicken for the Masters champions dinner (Skretta, Dave, Zoeller: My Tiger comment was a joke gone awry, AP News [May 23, 2013], available at https://apnews.com/zoeller-my-tiger-comment-was-joke-gone-awry-faaed3e48e9e4c68a6808129a502bd30 [last accessed Sept. 10, 2024])).
To suggest, as Defendants do, that Plaintiff's allegations are unconnected to race merely because they do not contain the words "black" or "African American" would distort the very notion of discriminatory animus and frustrate the purpose of anti-discrimination laws altogether (see Cadet-Legros v New York Univ. Hosp. Ctr., 135 AD3d 196, 204 [1st Dept 2015]["It is true that discrimination seldom announces itself openly"]; Alhaj v New York City Health & Hosps. Corp., 22 NY Slip Op 22318, 1072 [Sup Ct, NY County 2022] ["Employers are rarely so cooperative as to notate in the file that they are taking an adverse action 'for a reason expressly forbidden by law'"]). While express references to a protected trait can, and do, demonstrate direct evidence of discriminatory intent, direct evidence is not required, nor is it the standard (see Cadet-Legros, 135 AD3d at 204 ["it is important that discrimination plaintiffs be permitted to present a wide range of indirect evidence of discrimination, including the fact that a defendant [or its agent or employee] used coded language, that is probative of discriminatory intent"]; Alhaj, 22 NY Slip Op 22318 at 1072 ["An inference of discrimination can be drawn from circumstances such as 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's [adverse employment action]'"). As such, because Plaintiff sufficiently stated a cause of action for unlawful race discrimination under the NYSHRL, Defendants' motion to dismiss Plaintiff's first cause of action is denied.
ii. NYCHRL
Under the NYCHRL, it is unlawful discriminatory practice "for an employer or an employee or agent thereof, because of the actual or perceived . . . race . . . to discharge from employment such person or . . . to discriminate against such person in compensation or in terms, conditions or privileges of employment" (Administrative Code of City of NY § 8-107[1][a]). The elements of a discrimination claim under the NYCHRL largely mirror the NYSHRL, except that Plaintiff does not need to plead that he suffered an adverse employment action, only that he was treated differently than other employees under circumstances giving rise to discrimination (Herrington v Metro-N. Commuter R. Co., 118 AD3d 544, 544 [1st Dept 2014]; Askin v Dep't of Educ. Of City of New York, 110 AD3d 621, 622 [1st Dept 2013]). Under the NYCHRL no action can be "motivated in whole or in part, by [unlawful] discrimination" (see Cadet-Legros, 135 AD3d at 202).
With respect to the treatment of other employees, Plaintiff's allegations that Defendants [*5]failed to timely investigate his claims, that black support staff were asked to do more custodial tasks than white support staff, and that Plaintiff was given an impromptu performance evaluation shortly after he and two other black employees were targeted to clean the office sufficiently pleads a cause of action for race discrimination under the NYCHRL (NYSCEF Doc No. 27, verified amended complaint ¶¶ 21, 23, 25, 29, 31, 34, 35, 42, 85, 104, 128). Accordingly, Defendants' motion to dismiss Plaintiff's second cause of action is denied.
iii. Individual and Employer Liability
Finally, Defendants' argument that Plaintiff cannot sustain a cause of action for employment discrimination under the NYSHRL or NYCHRL because Plaintiff did not allege that the individuals discriminating against him were decisionmakers is unavailing. Under the NYSHRL, individuals may be personally liable for their discriminatory conduct as an "employer" or as an "aider and abettor" (Executive Law § 296[1], [6]). An individual defendant is an employer for the purposes of the NYSHRL when the individual has "any power to do more than carry out personnel decisions" (New York State Div. of Hum. Rts. v ABS Elecs., Inc., 102 AD3d 967, 969 [2d dept 2013]). Under the NYCHRL, individual defendants may be personally liable for their discriminatory conduct when they "have some supervisory role over the victim of their discrimination" (Russell v New York University, - NE3d -, 2024 NY Slip Op 02226 at 4-5 [Apr 25, 2024]). "As required by the statute's liberal rule of construction," a supervisory role is construed "broadly to include not just those with formal managerial or titular authority over a plaintiff, but as applicable to those who wield any ability to dictate or administer the compensation, terms, conditions, or privileges of the plaintiff's employment" (id.; see also Melendez v New York City Transit Auth., 204 AD3d 542, 543 [1st Dept 2022][issue of fact precluded summary judgment where individual defendant "had the de facto ability to direct other employees, notwithstanding his official title"]).
To recover against an employer under the NYSHRL, the plaintiff must demonstrate that the employer acquiesced in the discriminatory conduct or condoned it (Zakrzewska v New Sch., 14 NY3d 469, 481 [2010]; Franco v Hyatt Corp., 189 AD3d 569, 569—70 [1st Dept 2020]). The failure to intervene and/or investigate complaints of discrimination constitutes condonation (New York State Div. of Hum. Rts. v Besdad, Inc., 143 AD3d 987, 989 [2d Dept 2016] [The owners' failure to intervene [. . .] rose to the level of a knowing, after-the-fact forgiveness or acceptance of the offense, thus constituting condonation of the racial discrimination"]; Young v Geoghegan, 250 AD2d 423, 424 [1st Dept 1998] [jury could have found that the defendant employer condoned its employee's discriminatory conduct where the employer "failed to investigate repeated complaints of discrimination"]). "Proof of condonation and acquiescence is not necessary [however] where discriminatory conduct is perpetrated by a high-level managerial employee or someone sufficiently elevated in the employer's business organization to be viewed as its proxy" (Franco, 189 AD3d at 570). Under the NYCHRL employers are liable for their employee's conduct when: (i) "the employee exercised managerial or supervisory responsibility; or (ii) the employer knew of the employee's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; or (iii) the employer should have known of the employee's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct" (Administrative Code of NY § 8-107[13]). "An employer shall be deemed to have knowledge of an employee's discriminatory conduct [*6]where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility (id.).
In this instance, Plaintiff sufficiently pleads employer and individual liability on behalf of the Law Department and the individual Defendants, with the exception of Eison. Plaintiff's allegations that Finkelstein and Segreti assigned tasks to Plaintiff (NYSCEF Doc No. 27, verified amended complaint ¶¶ 9, 97, 99, 38, 55), that Orcutt assigned Segreti as Plaintiff's mentor (id. ¶¶ 15, 52), and that Evans, Fabian, Fay Leoussis, and Muriel Goode-Trufant received Plaintiff's internal complaints and effectuated his transfer to the SFLU demonstrate that these individuals had the power to do more than carry out personnel decisions and held a supervisory role over the conditions of Plaintiff's employment (id. ¶¶ 11, 12, 16, 85, 100, 104, 114, 116, 118; Emengo v State, 143 AD3d 508, 509 [1st Dept 2016] [plaintiff "sufficiently allege[d] that each individual defendant was an 'employer' for purposes of his claims, broadly asserting that each individual defendant was a high-ranking manager with, at least inferentially, supervisory powers, including the power to promote, discipline and terminate employees"]). Whether Plaintiff can ultimately prevail on these allegations is not relevant on a motion to dismiss (Cortlandt Street Recovery Corp., 31 NY3d 30 at 38).
Plaintiff sufficiently pleaded that the Law Department was aware of the discriminatory conduct by alleging that Segreti was present and laughed when Finkelstein made racial jokes, that Finkelstein was present when Segreti made such jokes, and by filing internal complaints with Evans and Fabian (NYSCEF Doc No. 27, verified amended complaint ¶¶ 42, 43, 44, 90, 100, 104, 149, 155). Finally, Plaintiff demonstrated the Law Department's failure to take immediate and corrective action, thereby condoning the discriminatory conduct by failing to investigate Plaintiff's complaints, transferring Plaintiff, and promoting Segreti (id. ¶¶ 73, 103, 114; New York State Div. of Hum. Rts. v Besdad, Inc., 143 AD3d 987, 989 [2d Dept 2016]; Young v Geoghegan, 250 AD2d 423, 424 [1st Dept 1998]).
With respect to Eison, Plaintiff's allegations are devoid of any concrete facts establishing that Eison wielded supervisory authority or possessed the capacity to influence personnel decisions, aside from his designation as "Senior Counsel" (NYSCEF Doc No. 27, verified amended complaint ¶ 14). Nonetheless, just as the hierarchical stature of a general suggests a capacity to command irrespective of direct orders issued, so too does Eison's senior title, when juxtaposed against Plaintiff's role as a non-attorney Claims Specialist, imply an imbalance of power and influence within the office. Viewed through the prism most favorable to Plaintiff and in the absence of discovery, such an inference suffices to sustain Plaintiff's claims against Eison at this preliminary stage. Accordingly, the motion is denied as to the first and second causes of action.
B. Hostile Work Environment
"A racially hostile work environment [under NYSHRL] exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'" (Forrest, 3 NY3d at 310, quoting Harris v Forklift Sys., Inc., 510 US 17, 21 [1993]). The court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" (Forrest, 3 NY3d at 310-311 [*7][citation omitted]). Isolated remarks that a reasonable person would consider "nothing more than petty slights and trivial inconveniences" cannot support a hostile work environment claim under the NYCHRL (Ji Sun Jennifer Kim v Goldberg, Weprin, Finkel, Goldstein, LLP, 120 AD3d 18, 26 [1st Dept 2014]).
Here, the complaint plausibly pleads hostile work environment claims under the NYSHRL and the NYCHRL (see Kwong, 204 AD3d at 445; Alshami v City Univ. of NY, 203 AD3d 592, 592-593 [1st Dept 2022]). The complaint's detailed allegations demonstrate that Plaintiff was subjected to a constant barrage of disparaging and derogatory remarks about fried chicken over the course of three months and beyond (NYSCEF Doc No. 27, verified amended complaint ¶ 23; Sims v Trustees of Columbia Univ., 168 AD3d 622, 623 [1st Dept 2019] [plaintiff stated a cause of action for hostile work environment by alleging that his supervisors repeatedly made racially derogatory comments, including calling him 'Bubbles,' which he testified was a reference to Michael Jackson's pet chimpanzee, and referring to him as 'boy' using a Southern accent"]). Further, Finkelstein purportedly tossed watermelon-flavored candy at Plaintiff while stating that it was his favorite flavor and made an Oreo sandwich while standing between Plaintiff and a colleague on more than one occasion (NYSCEF Doc No. 27, verified amended complaint ¶¶ 30-2, 34). Finkelstein and Segreti also allegedly joked about the lazy work ethic of black support staff members, likened SLU's black support staff to "lint, on a jacket," and copied Fabian on emails that were sent to and from Plaintiff (id. ¶¶ 35, 38, 42, 47, 93; see Hribovsek v United Cerebral Palsy of NY City, 223 AD3d 618, 621 [1st Dept 2024] [excessive tracking or monitoring of the plaintiff sufficient to sustain a hostile work environment claim]). 
These derogatory and degrading comments are not just mere isolated incidents, as Defendants have suggested (see Batemen v Montefiore Med. Ctr., 183 AD3d 489, 490 [1st Dept 2020] [issues of fact on hostile work environment claims where "plaintiff was disparaged and treated unfairly for months, including being repeatedly subjected to remarks, thinly-veiled and on one occasion express, which slighted black people as a group"]). Plaintiff claims that he was "clucked" at and subjected to invidious fried chicken comments approximately forty to fifty times over the span of months (NYSCEF Doc No. 27, verified amended complaint ¶¶ 23, 25). While defendants maintain that the terms and condition of Plaintiff's employment were not altered, these allegations "if true, could affect his ability to do his job and create an abusive working environment" (Kwong, 204 AD3d at 445). Thus, Defendants' motion to dismiss Plaintiff's third and fourth causes of action is denied.
C. Retaliation
Both the NYSHRL and the NYCHRL make it an unlawful employment practice to retaliate against a person who has opposed discrimination (Executive Law § 296 [7]; Administrative Code of City of NY § 8-107 [7]). Under the NYSHRL, the complaint must allege that: (i) Plaintiff was engaged in a protected activity, (ii) the employer was aware of Plaintiff's participation, (iii) Plaintiff suffered an adverse employment action, (iv) and a causal connection exists between the protected activity and the adverse action (Franco, 189 AD3d at 571). The NYCHRL employs a similar test but substitutes adverse action for action that is "reasonably likely to deter a person from engaging in protected activity" (id.). Under the NYCHRL there is no "type of challenged conduct [that is] categorically rejected as [*8]nonactionable" (Williams v New York City Hous. Auth., 61 AD3d 62, 71 [1st Dept 2009], lv denied 13 NY3d 702 [2009]). 
Under these principles, Plaintiff adequately states a cause of action for retaliation under NYSHRL and NYCHRL. Plaintiff complained of unlawful discrimination no less than four times (NYSCEF Doc No. 27, verified amended complaint ¶¶ 90, 100, 104, 149, 155). As a result, Plaintiff was transferred to the SFLU where his workload increased (id. ¶¶ 114, 141). To be sure, at oral argument, Defendants stated that "Plaintiff was transferred because of his complaints," and he was transferred even after he expressed fears and reservations about being relocated (id. ¶107). Beyond Plaintiff's transfer, Evans allegedly stopped investigating Plaintiff's complaint when she learned that Plaintiff contacted the NYCCHR, and it is not clear if the Law Department ever fully investigated Plaintiff's complaints (id. ¶¶ 102, 103). Finkelstein supposedly stopped communicating with Plaintiff and when he did, it was to make Plaintiff's job more difficult, by, for example, "requesting documents that he knew were impossible to obtain, or that Plaintiff could not obtain in a timely manner" (id. ¶¶ 98, 99; see Albunio, 16 NY3d at 476 [that plaintiff was "shunned and excluded from meetings" was sufficient to state a claim for retaliation under NYCHRL]). Plaintiff claims that he was denied letters of recommendation for the Universal Bar Exam and a functioning laptop to do his work (NYSCEF Doc No. 27, verified amended complaint ¶¶ 139, 164). Finally, Plaintiff was terminated (id. ¶ 166). Although two years passed between Plaintiff's final complaint and his termination, given the facts and circumstances presented, and in the absence of discovery, it cannot be conclusively determined that Plaintiff's complaints were not taken into account when the decision was made to terminate his employment (Harrington, 157 AD3d at 586 ["The absence of temporal proximity will not defeat the [retaliation] claim, where, as here, there are other facts supporting causation"]). As such, Defendants' motion to dismiss Plaintiff's fifth and sixth causes of action is denied.
D. General Municipal Law
Plaintiff pleads two causes of action sounding in tort. Specifically, negligent hiring and supervision and negligent or intentional infliction of emotional distress.[FN3]
 The notice of claim is a condition precedent to commencing a tort action against a public corporation or its employees (General Municipal Law § 50-e [1][a]). "The purpose of the notice of claim is to alert the municipality to the existence of the claim so that it can promptly investigate and preserve any relevant evidence before the passage of time renders such evidence unavailable or lessens its probative value" (see Matter of Jaime v City of New York, 41 NY3d 531, 539[2024]). As such, the notice must be filed within ninety days after the claim arose (General Municipal Law § 50-e [1][a]). Additionally, the notice must be in writing and set forth the nature of the claim, including "the time when, the place where and the manner in which the claim arose" (General Municipal Law § 50-e [2]).
The notice of claim need not "set forth a precise legal theory of recovery" (Miller v City of New York, 89 AD3d 612, 612 [1st Dept 2011]) so long as it contains specific information describing the time, place and manner of the complained of conduct sufficient to enable a municipality to conduct an investigation (see Vaynshelbaum v City of New York, 140 AD3d 406, [*9]407 [1st Dept 2016]). The "[f]ailure to comply with provisions requiring notice and presentment of claims prior to the commencement of litigation ordinarily requires dismissal" (Davidson v Bronx Mun. Hosp., 64 NY2d 59, 62 [1984]).
i. Negligent Hiring and Supervision
Here, Plaintiff's notice of claim gives Defendants adequate notice of Plaintiff's claim for negligent hiring and supervision. Plaintiff's notice of claim refers to "negligent supervision, hiring, and failure to train[]" (NYSCEF Doc No. 35 at 4) and identifies specific employees, details the conduct complained of, and attributes specific actions to each employee (see Rodriguez v New York City Tr. Auth., 90 AD3d 552, 552 [1st Dept 2011]). However, because Plaintiff served his notice of claim on July 11, 2019, and did not move to amend to include factual allegations from July 11, 2019, through his termination on May 29, 2021, Plaintiff cannot rely on events occurring before April 12, 2019, or after July 11, 2019, as the basis for his tort claim. Plaintiff's arguments regarding the continuing tort doctrine do not save the factual allegations outside of this time frame. "The continuous wrong doctrine is an exception to the general rule that the statute of limitations runs from the time of the breach though no damage occurs until later" (Henry v Bank of Am., 147 AD3d 599, 601 [1st Dept 2017] [internal quotation marks and citation omitted]). The doctrine applies to "continuing unlawful acts and not on the continuing effects of earlier unlawful conduct" (id.). In this case, the events described in the notice of claim do not involve a single, continuing pattern of tortious conduct and involved different actors and actions that occurred months to years apart (Campbell v New York City Dept. of Educ., 200 AD3d 488, 489 [1st Dept 2021]).
Turning to the facts as alleged between April 12, 2019, and July 11, 2019, Plaintiff stated a cause of action for negligent hiring and supervision. To plead a cause of action for negligent hiring and supervision, Plaintiff must plead facts demonstrating that "an employer knew of its employee's harmful propensities, that it failed to take necessary action, and that this failure caused damage to others" (Waterbury v New York City Ballet, Inc., 205 AD3d 154, 160 [1st Dept 2022]). "Liability for negligent hiring and retention is not limited to employees' actions within their scope of employment" and "does not require a special relationship between the defendant and the alleged victim" (Waterbury, 205 AD3d 154 at 161-2). Additionally, the employer does not need to benefit from or encourage the conduct for liability to attach, so long as the conduct was foreseeable, the employer has a duty to supervise the employment (id. at 162). "To suggest otherwise is to conflate negligent hiring and supervision—that is, a defendant's own failure to prevent employees' independent wrongdoing that it is aware of—with vicarious liability for employees' acts on an employer's behalf" (id.).[FN4]
In this case, Plaintiff's allegations that Segreti [*10]was present and laughed when Finkelstein made racial jokes, that Finkelstein was present when Segreti made such jokes, and that Plaintiff told Evans he was being discriminated against demonstrate the Law Department's awareness of its employees' discriminatory conduct (NYSCEF Doc No. 27, verified amended complaint ¶ 42, 43, 44, 100).[FN5]
Plaintiff adequately plead that the Law Department failed to take appropriate action by alleging that Evans stopped investigating Plaintiff's complaint(s), transferred Plaintiff, and promoted Segreti to Claims Specialist Level III (id. ¶¶ 73, 103).[FN6]
Finally, Plaintiff demonstrated his damages because of the Law Department's inaction by alleging that workplace hostility caused him to become physically sick, and that he sought the help of mental health specialists to treat his depression, anxiety, and sleepless nights (id. ¶¶ 135, 136, 137, 138). Affording Plaintiff the benefit of every possible favorable inference on a motion to dismiss, Plaintiff has stated a cause of action for negligent hiring and supervision (Leon, 84 NY2d at 87-88). Accordingly, Defendants' motion to dismiss Plaintiff's seventh cause of action is denied.
ii. Emotional Distress
Finally, Plaintiff's notice of claim adequately pleaded a claim for negligent and/or intentional infliction of emotional distress. Plaintiff not only claimed emotional distress damages but alleged in great detail the emotional distress that he suffered because of discriminatory conduct (NYSCEF Doc No. 35 at 3, 9; see Rodriguez, 90 AD3d at 552; Vaynshelbaum, 140 AD3d at 407 ["Plaintiffs were not required to use the word "intentional" to give notice of their legal theory of recovery, since the facts alleged provided notice of the excessive force theory"]). Plaintiff does not need to plead "a precise legal theory of recovery" and the notice of claim provided Defendants with ample information to conduct an investigation (Miller, 89 AD3d at 612). However, like his claim for negligent hiring and supervision, Plaintiff can only rely on those facts and events that occurred between April 12, 2019 and July 11, 2019 (Vaynshelbaum, 140 AD3d at 407).
Turning to Plaintiff's amended complaint, he stated a cause of action for negligent and intentional infliction of emotional distress. "[A] breach of a duty of care resulting directly in emotional harm is compensable even though no physical injury occurred" (Brown v New York Design Ctr., Inc., 215 AD3d 1, 9 [1st Dept 2023]). "[T]he mental injury must be a direct, rather than a consequential result of the breach, and the claim must possess some guarantee of genuineness" (id. [internal citations omitted]). To plead a cause of action for intentional infliction of emotional distress, Plaintiff must allege facts that demonstrate: "(i) extreme and [*11]outrageous conduct, (ii) an intent to cause, or disregard of a substantial probability of causing severe emotional distress, (iii) a causal connection between the conduct and the injury, and (iv) the resultant severe emotional distress" (Howell v New York Post Co., 81 NY2d 115, 121 [1993]; Murphy v Am. Home Prod. Corp., 58 NY2d 293, 303 [1983]. Here, Plaintiff pleaded specific and detailed allegations describing Defendants' degrading remarks and actions over the course of several months, if not years, as well as how Defendants' purported breach caused Plaintiff's mental anguish (NYSCEF Doc No. 27, verified amended complaint ¶ 135, 136, 137, 138). Accordingly, Defendants' motion to dismiss Plaintiff's eighth cause of action is denied.
Accordingly, it is hereby
ORDERED that the motion of Defendants the City of New York, the New York City Law Department, Michael Finkelstein, Joseph Segreti, Lillian Evans, Sosimo Fabian, Fay Leoussis, Howard Eison, John Orcutt, and Muriel Goode-Trufant to dismiss the complaint herein is denied; and it is further
ORDERED that Defendants the City of New York, the New York City Law Department, Michael Finkelstein, Joseph Segreti, Lillian Evans, Sosimo Fabian, Fay Leoussis, Howard Eison, John Orcutt, and Muriel Goode-Trufant are directed to serve an answer to the complaint within 20 days after service of a copy of this order with notice of entry; and it is further
ORDERED that counsel for the moving party shall serve a copy of this order with notice of entry upon the Clerk of the Court and the Clerk of the General Clerk's Office,
ORDERED that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page on the court's website)]; and it is further
ORDERED that the parties are directed to appear for a settlement conference in Room 320, 80 Centre Street, New York, New York on October 28, 2024 at 10:30 AM; and it is further
ORDERED that the Clerk is directed to set this matter for a preliminary conference for the first available date after the October 28, 2024 settlement conference.
This constitutes the decision and order of the court.
DATE 10/2/2024
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:Except where otherwise noted, the facts are recited here as alleged in the amended complaint and are accepted as true for the purpose of the motion, as required on a motion to dismiss.

Footnote 2:In 2019, the NYSHRL was amended to align the language and purpose of the statute with the language and purpose of the NYCHRL (see Kwong v City of New York, 204 AD3d 442, 444 n 1 [1st Dept 2022], lv dismissed 38 NY3d 1174 [2022]; Golston-Green v City of New York, 184 AD3d 24, 41 n 3 [2d Dept 2020]. With the amendments, both the City and State Human Rights Law must be liberally construed to accomplish the remedial purposes that they serve (Syeed v Bloomberg L.P., 41 NY3d 446, 451 [2024]). The NYSHRL amendments, "the effect of which is to render the standard for claims closer to the standard under the NYCHRL" "only apply to claims that accrue on or after the effective date of October 11, 2019" (Wellner v Montefiore Med. Ctr., US Dist Ct, SD NY, 2019 WL 4081898, at *5 n.4, Failla, J., 2019; Cannizzaro v City of New York, 82 Misc 3d 563, 576 [Sup Ct, NY County 2023]. "[A] cause of action for discrimination under the NYSHRL accrues and the limitation period begins to run on the date of the alleged discriminatory act" (Cannizzaro, 82 Misc 3d at 576, citing Fair Hous. Just. Ctr., Inc. v JDS Dev. LLC, 443 F Supp 3d 494, 504 [SD NY 2020]). In this action, Plaintiff's claims accrued before and after the amendments. We therefore review his claims under the prior and more stringent version of the NYCHRL as such claims would indubitably survive on a motion to dismiss under the post-amendment standard.

Footnote 3:Plaintiff styled his eighth cause of action as one for "emotional distress."

Footnote 4:"Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention" (Karoon v New York City Transit Auth., 241 AD2d 323, 324 [1st Dept 1997]). Here, Plaintiff has not brought a cause of action sounding in general negligence and the cause of action for negligent hiring or retention is therefore not duplicative. Moreover, the court need not reach the issue of whether the individual Defendants were acting within the scope of their employment.

Footnote 5:Plaintiff does not specify when Segreti and Finkelstein made racially motivated comments in the presence of one another. To the extent these comments were uttered between April 12, 2019 and July 11, 2019, they may be relied on as predicates to Plaintiff's seventh cause of action.

Footnote 6:Plaintiff does not specify when Segreti was promoted. To the extent that Segreti's promotion occurred between April 12, 2019 and July 11, 2019, it may be relied on as a predicate to Plaintiff's seventh cause of action.