**Denson v Donald J. Trump for President, Inc.**

2025 NY Slip Op 30511(U)

February 14, 2025

Supreme Court, New York County

Docket Number: Index No. 101616/2017

Judge: Francis A. Kahn III

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 32

--------------------------------------------------------------------------X

JESSICA DENSON,

Plaintiff,

- v -

DONALD J. TRUMP FOR PRESIDENT, INC.,

Defendant.

--------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 101616/2017 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 014 015 |

**DECISION + ORDER ON MOTION**

HON. FRANCIS A. KAHN, III:

The following e-filed documents, listed by NYSCEF document number (Motion 014) 373, 374, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 405, 406, 408, 410, 417, 418, 419, 420, 421, 422, 423, 424, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 458, 460, 461, 462, 463, 464

were read on this motion to/for _____ JUDGMENT - SUMMARY _____ .

The following e-filed documents, listed by NYSCEF document number (Motion 015) 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 407, 409, 411, 412, 413, 414, 415, 416, 459, 465

were read on this motion to/for _____ PARTIAL SUMMARY JUDGMENT _____ .

Upon the foregoing documents, the motions are determined as follows:

Plaintiff Jessica Denon commenced this action claiming, inter alia, that she endured a hostile work environment, experienced sex discrimination, and faced retaliation related to her employment with defendant, Donald J. Trump for President, Inc., a corporate entity formed to facilitate Donald J. Trump's 2016 presidential campaign (the Campaign), resulting in her being barred by defendant from any position on Trump for America, Inc. (the Transition Team"), the inaugural, or any position in the Trump administration.  In her supplemental amended complaint, plaintiff seeks damages for the alleged pecuniary and emotional costs imposed on her as a result of the Campaign's commencement of an arbitration mandated by the non-disclosure agreement (the NDA) that she signed as a condition of her employment.

Motion sequence nos. 014 and 015 are consolidated for disposition.  In motion sequence no. 014, the Campaign moves, pursuant to CPLR 3212, for summary judgment dismissing each claim asserted as against it in the amended complaint (NYSCEF Doc No. 337) and the amended supplemental complaint (NYSCEF Doc No. 379).

**101616/2017  DENSON, JESSICA vs. TRUMP, DONALD J. FOR**                          **Page 1 of 20**
**Motion No.  014 015**

1 of 20

In motion sequence no. 015, plaintiff moves, pursuant to CPLR 3212, for an order granting her partial summary judgment as to liability on her amended supplemental complaint for retaliation in violation of the New York City Human Rights Law (NYCHRL), New York City Administrative Code (Administrative Code) § 8-101, et seq., and setting the retaliation claim down for an immediate trial on damages.

For the reasons set forth below, plaintiff's motion for summary judgment on the amended supplemental complaint is denied. The Campaign's motion for summary judgment is granted, and both the amended complaint and the amended supplemental complaint are dismissed.

## FACTS

### Background

The Campaign was a corporation that employed plaintiff and other persons to campaign for Donald J. Trump during the 2016 Presidential Election (defendant's statement of material facts [Doc No. 374], ¶ 1). Plaintiff was employed by the Campaign from on or about August 20, 2016 to November 10, 2016 (*id.*, ¶ 2). During her employment, plaintiff worked in the Campaign's data department, and then in connection with the Campaign's Hispanic engagement efforts, as the Director of Hispanic Engagement for the Campaign (*id.*, ¶ 3).

The Campaign initially hired plaintiff to work in its data department (*id.*, ¶ 12). Plaintiff worked in the Campaign's data department from on or about August 20, 2016 to September 3, 2016, a time period of approximately two weeks (*id.*, ¶ 13). During the time that she worked in the Campaign's data department, plaintiff's direct supervisor was Ron Wilson, and she was also supervised by Camilo Sandoval (*id.*, ¶ 14-15).

Plaintiff alleges that, over this two-week period, Mr. Sandoval demeaned her daily (*see* plaintiff's dep [NYSCEF Doc No. 381], at 64-69), and routinely overworked her, establishing an exhausting pattern of having her report for work early, keeping her idle, then assigning her work at the end of the day, requiring her to work late each evening (*see id.* at 64-65; *see also* amended complaint, ¶ 9). According to plaintiff, Mr. Sandoval did not treat male employees like this, instead apologizing to them even over minor inconveniences (*see* plaintiff's dep, at 66-69, 75; *see also* amended complaint, ¶ 9).

On September 1, 2016, plaintiff volunteered for a translation project for Steve Bannon, the Campaign's CEO, to scrutinize a speech being given in Spanish by the President of Mexico (*see* plaintiff's dep, at 109-112; *see also* amended complaint, ¶ 13). Thereafter, Mr. Bannon promoted plaintiff from data to mobilize the Campaign's Hispanic engagement efforts (*see* plaintiff's dep at 109; *see also* Bannon dep [NYSCEF Doc No. 386], at 12-13, 17, 126-131), and on September 3, 2016, plaintiff started working on Hispanic engagement for the Campaign (DSOF, ¶ 18; amended complaint, ¶ 14). Mr. Bannon then approved the title of Director of Hispanic Engagement and a raise for plaintiff from $4,000 per month to $7,500 monthly (*see* plaintiff's dep, at 112; *see also* Bannon dep, at 126). When she stopped working in the Campaign's data department, plaintiff no longer reported to Mr. Sandoval, and had no further interactions with him (DSOF, ¶¶ 16-17).

101616/2017  DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No.  014 015

Page 2 of 20

In her new position, plaintiff's supervisor was Arlene Delgado, to whom she reported for approximately three weeks (*id.*, ¶¶ 20-21). On October 5, 2016, plaintiff agreed to continue working on Hispanic engagement on the West Coast (*id.*, ¶ 22). Starting in or around mid-October 2016, plaintiff continued to work on Hispanic engagement on the West Coast for approximately two weeks (*id.*, ¶ 23).

Plaintiff alleges that, after the election, Bannon praised her work and offered her a job on the Transition Team, but that others, acting on the Campaign's behalf, undermined the Transition Team offer (*see* plaintiff's dep, at 363-373). According to plaintiff, Mr. Sandoval, who was motivated by plaintiff's sex, made and encouraged others to make numerous wild, uninvestigated, and unsubstantiated complaints about her, using his position on the Campaign's leadership team to influence others to take damaging adverse actions against her (*see* amended complaint, ¶ 20). These included, among others, Lucia Castellano, who, as the Campaign's Director of Human Resources, specifically directed the Transition Team, inaugural, and Administration not to hire plaintiff for any role (*see id.*, ¶ 42; *see also* plaintiff's dep, at 363-373).

Specifically, plaintiff alleges that Sandoval: (1) started a rumor that she was responsible for the October 2016 leak of Donald Trump's taxes; (2) attempted to have another staffer be complicit in theft of her personal laptop and personal files that she had left at the home of a friend that she had worked with in the data department for safe keeping; (3) blocked her access to the national supporter database that she used to support Hispanic coalitions; and (4) cyberbullied her by making multiple unauthorized attempts to reset the password on the Spanish Twitter account solely authorized to her by campaign officials and registered to her phone (*see* amended complaint, ¶ 21).

Plaintiff also alleges that she complained about Mr. Sandoval's behavior, but that the Campaign failed to investigate or take any remedial action (*see* plaintiff's dep, at 192). More specifically, she alleges that, during a meeting with Ms. Castellano on October 5, 2016, she described her history with the Campaign and Mr. Sandoval's alleged misconduct toward her, including stating she believed Mr. Sandoval was taking these actions against her because of sex (*see id.* at 196-197, 200-201; *see also* amended complaint, ¶¶ 25-26). She alleges that, however, she left the meeting feeling that the issues surrounding Mr. Sandoval's conduct were unaddressed (*see* plaintiff's dep, at 214), and that retaliation soon followed after the meeting.

According to plaintiff, this retaliation consisted of, inter alia: narrowing her scope of work to one minor task and banishing her to Colorado; repeatedly changing the travel arrangements previously agreed upon; causing new superiors to prohibit her from attending campaign events; disabling her ability to perform even the limited task she had been reduced to by permitting Sandoval to continue to block her access to the supporter database; denying her permission to join the campaign's women's tour; failing to investigate the disappearance of a laptop charger that may have implicated one or more individuals in unauthorized access to her personal laptop in Trump Tower; and barring her, after the election, from any future employment on President Trump's transition team or in his administration, notwithstanding Mr. Bannon's prior job offer (*see* amended complaint, ¶¶ 28, 33, 34, 42).

[* 3]

Plaintiff's employment with the Campaign ended on November 10, 2016, two days after the 2016 Presidential Election on November 8, 2016 (DSOF, ¶ 24). The majority of the Campaign's workforce stopped working for the Campaign on or about November 10, 2016 (*id.*, ¶ 25).

Plaintiff alleges that, on November 22, 2016, Mr. Bannon offered her a job on the Transition Team in an email copied to a leading member of the transition, who confirmed that they would "find the right fit" for her (amended complaint, ¶ 38). She further alleges that, however, the offer never materialized because the Campaign successfully blocked her from assuming any future position (*id.*, ¶¶ 38-39, 42).

**Procedural History**

Plaintiff filed this action on November 14, 2017 (plaintiff's statement of facts [NYSCEF Doc No. 403], ¶ 1). The next month, the Campaign filed a demand for arbitration (NYSCEF Doc No. 254) against plaintiff seeking $1.5 million in damages (the Arbitration), pursuant to the terms of the NDA (NYSCEF Doc No. 234) that plaintiff executed as a condition of her employment. The NDA contained non-disclosure and non-disparagement provisions which prohibited her from disclosing, disseminating or publishing any confidential information unfavorable to Donald J. Trump, his family or his businesses. Further, the agreement provided that she could not demean or disparage Trump, his family or his businesses publicly. At the sole election of defendant, any dispute arising under or relating to the NDA was to be resolved by binding arbitration.

In the demand, the Campaign stated that plaintiff "breached confidentiality and non-disparagement obligations ... by publishing certain confidential information and disparaging statements in connection with a lawsuit she filed against claimant in New York Supreme Court." Plaintiff did not participate in the arbitration, and instead, brought a suit in federal court for a declaration that the NDA was void and unenforceable as against public policy (PSOF, ¶ 5).

By decision dated December 11, 2018, the arbitrator found the NDA enforceable, and issued a final award of $49,507.64 (the Award) (*id.*, ¶ 7). On July 8, 2010, Justice Arlene Bluth confirmed the Award (*id.*, ¶ 8). On July 22, 2019, the court issued a judgment for $52,229.88 (the Judgment) (*id.*, ¶ 9).

Plaintiff appealed to the Appellate Division, First Department, which vacated the Award and the Judgment, holding that it was "partly made in violation of public policy and otherwise in excess of the arbitrator's authority" (*Denson v Donald J. Trump for President, Inc.*, 180 AD3d 446, 446 [1st Dept 2020]).

Subsequently, on May 29, 2020, plaintiff moved for leave to supplement her complaint in this action to add a claim for retaliation, based on the Campaign's action in bringing the Arbitration, obtaining the Award and Judgment, and pursuing execution of that Judgment against plaintiff. On January 26, 2021, the court granted the motion (PSOF, ¶15). On January 28, 2021, plaintiff filed the supplemental amended complaint, which formally added a claim for retaliation in violation of NYCHRL § 8-107 (7).

101616/2017 DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No. 014 015

Page 4 of 20

Thereafter, plaintiff commenced a class action suit against defendant in New York State Supreme Court in which she sought a declaratory judgment on behalf of all class members that the employment agreement containing the NDA was void. It further sought an injunction prohibiting enforcement of the NDA. That action was removed to federal court (*see Denson v Donald J. Trump for President, Inc.*, 20-CV-4737 [PGG] [SD NY 2020]). In that action, Judge Paul G. Gardephe denied defendant's motion to dismiss, and granted plaintiff's motion for summary judgment to the extent that the NDA within the employment agreement was declared invalid and unenforceable as to plaintiff. Judge Gardephe held that neither the non-disclosure nor the non-disparagement clauses were sufficiently definite to be enforceable (*Denson v Donald J. Trump for President, Inc.*, 530 F Supp 3d 412, 437 [SDNY 2021]).

Plaintiff initially moved for partial summary judgment on the supplemental amended complaint in motion sequence no. 010 (*see* NYSCEF Doc Nos. 218-248). The court denied the motion without prejudice on technical grounds, because plaintiff failed to submit a statement of undisputed facts. On June 22, 2021, before the parties conducted any depositions, plaintiff filed her second summary judgment motion (motion sequence no. 011) on her post-employment retaliation claim under the NYCHRL (*see* NYSCEF Doc Nos. 249-273, 308, 311).

The first principal argument that plaintiff raised on the motion was that both the Appellate Division's decision vacating the Award and the federal decision invalidating the NDA collaterally estopped the Campaign from arguing that it had not retaliated against plaintiff. This court disagreed, finding that precise issue of retaliation under NYCHRL § 8-107 (7) had not been litigated in the prior proceedings (*see Denson v Donald J. Trump for President, Inc.*, 2021 NY Slip Op 32095[U], * 3-4 [Sup Ct, NY County 2021]). The First Department affirmed (*see Denson v Donald J. Trump for President, Inc.*, 206 AD3d 512, 513 [1st Dept 2022] [finding that neither decision "has preclusive effect," because "(n)either decision made any findings with respect to the issue of defendant's motives for pursuing arbitration, and the retaliation claim did not arise solely from the transactions at issue in those prior proceedings"]).

The second principal argument was that plaintiff had established, based on undisputed facts, all of the elements of a retaliation claim under the NYCHRL as a matter of law, and that the Campaign failed to lay bare any proof of a legitimate non-retaliatory reason for bringing a $1.5 million arbitration against Ms. Denson. In opposition to the motion, the Campaign proffered the July 19, 2021, affidavit of Michael S. Glassner, its former chief operating officer who was personally involved in the decision to initiate the arbitration. In his affidavit (NYSCEF Doc No. 264), Mr. Glassner asserted that that the Campaign had a legitimate, good faith belief that plaintiff had purposefully and unnecessarily pleaded certain allegations in her initial underlying pleading that violated her then-valid confidentiality and non-disparagement obligations.

This court also found that plaintiff had failed to make out a prima case for retaliation, holding that:

> "Plaintiff's reliance on Defendant's arbitration demand as self-evident proof of conduct which was reasonably likely to deter Plaintiff [from engaging in a protected activity] is ... unavailing. Defendant's right to proceed to arbitration was agreed to by both parties, and this Court as well as the District Court both endorsed

**101616/2017  DENSON, JESSICA vs. TRUMP, DONALD J. FOR**                    **Page 5 of 20**
**Motion No. 014 015**

5 of 20

Defendant's choice to proceed to arbitration. In sum, the submitted evidence does not demonstrate prima facie every element of Plaintiff's retaliation cause of action"

(*id.* at * 4).

The First Department affirmed, holding that:

"The record fails to demonstrate conclusively that defendant commenced arbitration proceedings pursuant to the parties' non-disclosure, non-disparagement agreement (NDA) in retaliation for plaintiff's filing of a sex discrimination action. Defendant submitted its chief operating officer's affidavit averring that it had a legitimate basis for compelling arbitration, i.e., that it in good faith believed plaintiff violated the NDA by making factual allegations that exceeded the facts necessary to state a viable claim, and plaintiff failed to submit evidence showing that this proffered reason was pretextual"

(206 AD3d at 512 [1st Dept 2022] [internal citations omitted]).

On January 9, 2023, plaintiff deposed Mr. Glassner (*see* NYSCEF Doc No. 397). Similar to what he attested to in his prior affidavit, Mr. Glassner testified at his deposition that he believed that plaintiff had purposefully pleaded sensationalist allegations in her complaint for media consumption to embarrass the Campaign, and to make it appear as if the Campaign was disorganized, chaotic, and unprofessional. Mr. Glassner also testified that he believed that plaintiff had violated her confidentiality and non-disparagement obligations by unnecessarily disclosing information that had no bearing on her discrimination claims, such as information pertaining to internal and otherwise private Campaign operations, communications, hiring and personnel decisions, and Secret Service activity (*see id.*).

## DISCUSSION

### Defendant's Motion for Summary Judgment Dismissing the Amended Complaint

"'[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact'" (*Ayotte v Gervasio*, 81 NY2d 1062, 1063 [1993] [citation omitted]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). The burden is a heavy one: the facts must be viewed in the light most favorable to the non-moving party and every available inference must be drawn in the non-moving party's favor (*Sherman v New York State Thruway Auth.*, 27 NY3d 1019, 1021 [2016]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad*, 64 NY2d at 853; *see also Lesocovich v 180 Madison Ave. Corp.*, 81 NY2d 982 [1993]).

The party opposing summary judgment has the burden of presenting evidentiary facts sufficient to raise triable issues of fact (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *CitiFinancial Co. [DE] v McKinney*, 27 AD3d 224, 226 [1st Dept 2006]). Summary judgment may be granted only when it is clear that no triable issues of fact exist (*Alvarez v Prospect Hosp.*,

101616/2017 DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No. 014 015

Page 6 of 20

6 of 20

68 NY2d 320, 324 [1986]), and "is inappropriate in any case where there are material issues of fact in dispute or where more than one conclusion may be drawn from the established facts" (*Friends of Thayer Lake LLC v Brown*, 27 NY3d 1039, 1043 [2016]; *see also Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]; *Tronlone v Lac d'Amiante Du Quebec*, 297 AD2d 528, 528-529 [1st Dept 2002], *affd* 99 NY2d 647 [2003]).

This court finds that the Campaign has established its entitlement to summary judgment dismissing all of the causes asserted as against it in the amended complaint, and that plaintiff has failed to raise any triable issues of material fact.

## 1. Defamation

In support of her claim for defamation, plaintiff alleges that Campaign staffers defamed her by stating that she:

1) Improperly rummaged through the offices of Campaign leaders;
2) Was a "bitch" who was "out of control;"
3) Was dangerous and a threat to the Campaign;
4) Met with donors without authorization;
5) Leaked Trump's tax records to the media;
6) "Threatened to call the media;"
7) Was "shopping around documents from the Campaign;" and
8) Wasted campaign money.

(*see* plaintiff's dep, at 77-78, 156-158, 161-162, 170-171, 178-179, 183, 384; *see also* amended complaint, ¶¶ 4, 6, 21, 26, 29, 40).

The statute of limitations for defamation is one year (*see* CPLR 215 [3]; *Jacobson v Seddio*, 225 AD3d 448, 450 [1st Dept 2024]). However, as plaintiff admitted at her deposition, all of the alleged statements underlying her defamation claims occurred in October 2016, which was more than one year prior to plaintiff's commencement of this lawsuit on November 14, 2017 (*see* plaintiff's dep, at 190, 200, 384; *see e.g. Stringer v Kim*, 226 AD3d 607, 607-608 [1st Dept 2024] ["There is no dispute that defendant's original statements concerning plaintiff were made in April 2021, which is more than a year before this action was commenced, and therefore fall outside the statute of limitations pursuant to CPLR 215 (3)"]; *Smulyan v New York Liquidation Bur.*, 158 AD3d 456, 457 [1st Dept 2018] [affirming dismissal of defamation claim as time-barred "to the extent it is based on alleged instances of defamation that occurred before November 13, 2014—more than one year before plaintiff commenced this action"]). As such, plaintiff's defamation claims are unequivocally time-barred.

Moreover, plaintiff's claims are principally based on paraphrased hearsay statements, which she purports to have heard secondhand (*see* plaintiff's dep at 156-158, 161-162, 167, 178-179, 183). Indeed, plaintiff further admitted at her deposition that she cannot even properly identify the majority of the alleged statements, much less the specific time, place, and manner of these alleged statements (*see* plaintiff's dep at 156-158, 161-162, 167, 178-179, 183). Under CPLR 3016 (a), this is insufficient to meet the specificity requirements for a defamation claim to

**101616/2017 DENSON, JESSICA vs. TRUMP, DONALD J. FOR**
**Motion No. 014 015**

survive dismissal on a motion to dismiss, or a motion for summary judgment (*see e.g. Manas v VMS Assoc., LLC*, 53 AD3d 451, 454 [1st Dept 2008] [affirming dismissal of defamation claim where "plaintiff appear[ed] to have paraphrased the allegedly defamatory statements"]; *Khan v Reade*, 7 AD3d 311, 312 [1st Dept 2004] [defamation claim should have been dismissed "inasmuch as plaintiff failed to allege the precise words allegedly giving rise to defamation and failed to allege in the complaint the time, place and manner of publication"]; *see also CSI Group, LLP v Harper*, 153 AD3d 1314, 1320 [2d Dept 2017] [lower court should have granted defendants summary judgment on plaintiffs' defamation claim because they "did not set forth the actual words complained of"]; *Naderi v North Shore-Long Is. Jewish Health Sys.*, 135 AD3d 619, 620 [1st Dept 2016] ["Plaintiff's defamation claims allege nothing more than nonspecific defamatory rumors, which do not amount to actionable defamation"]).

In her response to the motion, plaintiff does not dispute that all of the alleged defamatory statements that she identified in her amended complaint and at her deposition were made more than one year prior to her commencement of this lawsuit, or that most of these alleged statements are paraphrased hearsay statements that she heard secondhand. Rather, plaintiff now premises her defamation claims on the assertions that (1) Ms. Castellano defamed her in December 2016 when she stated to the Transition Team that plaintiff should not be hired by the Transition Team or the federal government, i.e., less than one year before she filed her action, and (2) her defamation claims as a whole should be governed by the three-year statute of limitations for tortious interference claims. The court rejects both arguments.

As an initial matter, the three-year limitations period for tortious interference claims cannot be applied to the alleged defamatory statements that plaintiff references in her complaint and at deposition because it is undisputed that all these purported statements were made in October 2016 (*see* plaintiff's dep, at 190, 200, 384). As such, these alleged statements could not have "interfered" with any "specific business relationship" that plaintiff had with the Transition Team (or the federal government) because Donald J. Trump had not even won the 2016 Presidential Election at the time they were made (*see e.g. Pasqualini v MortgageIT, Inc.*, 498 F Supp 2d 659, 670 [SD NY 2007] ["'New York Courts have consistently ruled that a claim which is ostensibly based upon the intentional torts of interference with advantageous or contractual relations, but which alleges injury to reputation, is a disguised defamation claim and subject to a one-year limitations period'"] [citation omitted]; *Dobies v Brefka*, 273 AD2d 776, 778 [3d Dept 2000] ["we decline to reinstate the claim for tortious interference with economic advantage in the absence of an alleged act of interference with a contract or business relationship distinct from the general declaration of injury to reputation included in plaintiff's defamation claims"]; *see also Matter of Entertainment Partners Group v Davis*, 198 AD2d 63, 64 [1st Dept 1993] [lower court "properly rejected plaintiff's attempt to bring a defamation action against the defendants ... in the guise of an economic tort, as well as the plaintiff's attempt to cast its defamation claim as tortious interference with business relations ... since it is well settled that a plaintiff may not circumvent the one-year statute of limitations applicable to defamation actions (CPLR 215 [3]) by denominating the action as one for intentional interference with economic relations ... if, in fact, the claim seeks redress for injury to reputation"]; *Ramsay v Mary Imogene Bassett Hosp.*, 113 AD2d 149, 150-51 [3d Dept 1985] [negative job references provided to area hospitals in connection with doctor's application for employment constituted defamation rather than interference with prospective economic

101616/2017 DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No. 014 015

Page 8 of 20

8 of 20

advantage]). Thus, plaintiff cannot recast her purported defamation claims as a tortious interference claim to try to take advantage of an extended limitations period.

In addition, plaintiff presents no evidence that any of the alleged defamatory statements that she identified in her complaint and at her deposition were ever communicated to the Transition Team (or the federal government), such that plaintiff could assert that any of the statements "interfered" with any such purported business relationships.

With respect to Ms. Castellano, plaintiff references two emails written to Brian Jack of the Transition Team. On December 2, 2016, Ms. Castellano wrote: "Jessica is NOT ever to be hired onto transition, inaugural or brought to DC!" (*see* NYSCEF Doc No. 452). On December 29, 2016, Ms. Castellano again wrote to Mr. Jack, stating that "This name should NEVER be hired by the Administration anywhere!!" (*see* NYSCEF Doc No. 454 [capitals in original]).

However, Ms. Castellano's statements to the Transition Team are not actionable for two distinct reasons. First, none of them contain any false statement of fact—they are non-actionable declarations (*see Stepanov v Dow Jones & Co., Inc.*, 120 AD3d 28, 34 [1st Dept 2014)] ["Defamation is the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace]; *see e.g. Ross v State Univ. of New York*, 166 AD3d 1034, 1035 [2d Dept 2018] ["The claim failed to set forth a potentially meritorious defamation cause of action, since the statements in the emails upon which the defamation allegations are based—stating that the claimant was not allowed to supervise residents—were nonactionable directives"]; *Wilcox v Newark Val. Cent. School Dist.*, 74 AD3d 1558, 1561 [3d Dept 2010] [dismissing defamation claim premised on letter directing plaintiff to "refrain from any one-on-one conversations with students" because "(t)his utterance was not a statement of fact or opinion about plaintiff, but rather a directive issued to plaintiff by her superior"]; *Chang v Fa-Yun*, 265 AD2d 265, 265 [1st Dept 1999] ["'The mere statement of discharge or termination from employment, even if untrue, does not constitute libel'"] [citation omitted]).

Second, Ms. Castellano's statements are qualifiedly privileged as a communication between a former employer and prospective employer (*see e.g. Mark v Brookdale Univ. Hosp. & Med. Ctr.*, 2005 WL 1521185, * 23, 2005 US Dist LEXIS 12584, * 63 [ED NY 2005] ["Communications between a plaintiff's former employer and the plaintiff's prospective employer cannot support a cause of action to recover damages for defamation because New York recognizes a qualified privilege with respect to communications between former and prospective employers as to the character of a former employee even though such information may prove ultimately to be inaccurate"] [citations, quotation marks and alterations omitted]; *Apionishev v Columbia Univ. in N.Y.*, 1012 WL 208998, * 10, 2012 US Dist LEXIS 8160, * 10 [SD NY 2012] [dismissing defamation claims, in part, because the statements "amount to no more than a former employer's protected opinion regarding an employer's performance and the cause of his termination"]; *Serratore v American Port Servs.*, 293 AD2d 464, 465 [2d Dept 2002] ["The responses of the plaintiff's former employer to a questionnaire from the plaintiff's prospective employer cannot support a cause of action to recover damages for defamation"]).

For all these reasons, plaintiff's defamation claims fail as a matter of law, and must be dismissed.

101616/2017  DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No. 014 015

Page 9 of 20

### 3. Intentional and Negligent Infliction of Emotional Distress

In the amended complaint, plaintiff does not detail the behavior underlying her claims for negligent and intentional infliction of emotional distress, other than by referring to the alleged defamation by campaign staffers (*see* amended complaint, ¶ 41 ["By reason of the facts and circumstances stated above, the campaign caused Denson severe emotional distress [by] ... derailing her professional life and defaming her character"]). As such, both causes of action are duplicative of the defamation claim because they are based upon the exact same conduct as that alleged in the defamation claim – the allegedly defamatory statement made by campaign staffers about plaintiff. New York courts routinely dismiss such derivative claims where, as here, they "fall within the ambit of other traditional tort liability, namely, [a] cause of action sounding in defamation" (*Fleischer v NYP Holdings, Inc.*, 104 AD3d 536, 538 [dismissing "cause[] of action alleging ... intentional infliction of emotional distress against each of the defendants ... as duplicative"]; *see also Matthaus v Hadjedj*, 148 AD3d 425, 425 [1st Dept 2017] ["Supreme Court properly granted defendant's motion to dismiss plaintiff's claim for intentional infliction of emotional distress as duplicative of her defamation cause of action"]; *Bacon v Nygard*, 140 AD3d 577, 578 [1st Dept 2016] [affirming dismissal of intentional infliction claim "since the underlying allegations fall within the ambit of the defamation causes of action"]; *Stanley v City of New York*, 71 Misc 3d 171, 181 [Sup Ct, NY County 2020] ["As an initial matter, causes of action for intentional and negligent infliction of emotional distress are not permitted if they essentially duplicate tort ... causes of action"]).

Indeed, as plaintiff fails to address defendant's arguments that these claims fall as a matter of law, plaintiff abandoned these causes of action (*see Jamie Ng v NYU Langone Med. Ctr.*, 157 AD3d 549, 550 [1st Dept 2018] ["Plaintiff's failure to oppose so much of the motion as sought dismissal of the lack of informed consent claim, constituted an abandonment of the claim"]; *Saidin v Negron*, 136 AD3d 458, 459, [1st Dept 2016] ["Plaintiff abandoned his claim against the individual police officer by failing to oppose that part of the motion to dismiss the claim as against him"]; *see also Gary v Flair Beverage Corp.*, 60 AD3d 413, 413 [1st Dept 2009]).

As such, both of these causes of action are dismissed.

### 4. Tortious Interference with Prospective Economic Advantage

The "tort of interference with business relations applies to those situations where the third party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant" (*WFB Telecom., Inc. v NYNEX Corp.*, 188 AD2d 257, 257 [1st Dept 1992]). "A claim for tortious interference with prospective business advantage must allege that: (a) the plaintiff had business relations with a third party; (b) the defendant interfered with those business relations; (c) the defendant acted with the sole purpose of harming the plaintiff or by using unlawful means; and (d) there was resulting injury to the business relationship" (*Thome v Alexander & Louisa Calder Found.*, 70 AD3d 88, 108 [1st Dept 2009]).

Plaintiff premises her claim for tortious interference with prospective economic advantage on the assertion that the Campaign retaliated against her for making complaints of discrimination by interfering with her ability to be hired by the federal government for a position at the White

101616/2017 DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No. 014 015

Page 10 of 20

[* 10]

10 of 20

House and the Transition Team (*see* amended complaint, ¶¶ 6, 39, 42). Although plaintiff asserts that Mr. Bannon personally made her an offer of employment, in fact, the evidence in the record reveals that plaintiff never received any actual offer of employment from the federal government or the Transition Team (*see* plaintiff's dep, at 357-359, 371 [testifying that she was never provided with an offer letter or terms and conditions of employment, and was never informed of even the type of work that she would be doing, or how much she would be paid]; *see also* Bannon dep, at 28-30). Rather, both plaintiff and Mr. Bannon testified that Mr. Bannon merely connected plaintiff with a Transition Team representative by email (*see* plaintiff's dep, at 358-362; Bannon dep, at 27-32).

This evidence is insufficient to support a tortious interference claim (*see e.g. Murphy v City of New York*, 59 AD3d 301, 301 [1st Dept 2009] [affirming dismissal of tortious interference claim finding, among other things, that plaintiff "failed to demonstrate the existence of a job offer" that defendants purportedly interfered with] [citations omitted]; *see also Brook v Peconic Bay Med. Ctr.*, 213 AD3d 448, 448 [1st Dept 2023] ["Plaintiff failed to raise an issue of fact as to the existence of a job offer that would have been extended to him but for defendant's conduct; accordingly, the claim alleging tortious interference with prospective economic advantage was properly dismissed"]; *Miller v Livanis*, 189 AD3d 446, 447 [1st Dept 2020] ["The Court also properly dismissed plaintiff's claim for tortious interference with prospective business relations" because "(w)hile plaintiff argues that Livanis did interfere (with a job prospect), by directly contacting the Principal's Program at Hunter College so that he would lose an opportunity to become an administrator, such vague aspirations of future employment are insufficient to meet this standard"]).

In any event, plaintiff cannot premise her tortious interference claim on Ms. Castellano's statements to the Transition Team because, as demonstrated above, these statements are not actionable as a matter of law and, therefore, cannot form the basis of an actionable tortious interference claim (*see e.g. Sabharwal & Finkel, LLC v Sorrell*, 117 AD3d 437, 438 [1st Dept 2014] ["Dismissal of the defamation claim also requires dismissal of the tortious interference claim, since that is the basis for the allegation that defendant's conduct was 'otherwise unlawful'"] [citation omitted]).

## 5. Hostile Work Environment

Plaintiff brings her claim for hostile work environment under the NYCHRL, which provides, in relevant part, that "[i]t shall be an unlawful discriminatory practice ... [for] an employer or employee or agent thereof, because of the actual or perceived ... gender ... of any person ... to discriminate against any such person in compensation or in terms, conditions or privileges of employment" (Administrative Code § 8-107 [1] [a] [3]). Plaintiff bases this claim on the behaviour of Mr. Sandoval, who, she alleges "targeted the plaintiff because she was a woman" (amended complaint, ¶ 4; *see also id.*, ¶ 31 ["all of the actions taken against her by Sandoval, were motivated by the fact that she was a woman"]). She further alleges that "[t]he campaign compounded a slander crusade executed by Sandoval against Denson, including the claim that she was responsible for an illegal leak of Donald Trump's taxes, and extended his assault, step-by-step thwarting and eliminating her very ability to perform the tasks she had been given, and perpetuating a climate of fear and terror for the extent of her employment and beyond" (*id.*).

101616/2017 DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No. 014 015

Page 11 of 20

11 of 20

[* 11]

"'[U]nder the [NYCHRL], liability for a harassment/hostile work environment claim is proved where a person provides that he or she was treated less well than other employees because of the relevant characteristic'" (*Benitez v Jamaica Hosp. Med. Ctr.*, 230 AD3d 1284, 1285 [2d Dept 2024] [citation omitted]; *see also Reichman v City of New York*, 79 AD3d 1115, 1118 [2d Dept 2020]). "In other words, all that is required to sustain a NYCHRL "hostile work environment claim" is "unequal treatment" based upon membership in a protected class .... Questions of "severity" or "pervasiveness" go to damages only—not to liability" (*Fattoruso v Hilton Grand Vacations Co., LLC*, 873 F Supp 2d 569, 578 [SD NY 2012], *affd* 525 F Appx 26 [2d Cir 2013]).

The conduct alleged must, however, exceed "what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences'" (*Williams v New York City Hous. Auth.*, 61 AD3d 62, 80 [1st Dept 2009] [citation omitted]; *accord Parham v City of New York*, 84 Misc 3d 1204[A], 2024 NY Slip Op 51360[U], * 7 [Sup Ct, NY County 2024] ["Isolated remarks that a reasonable person would consider 'nothing more than petty slights and trivial inconveniences' cannot support a hostile work environment claim under the NYCHRL"], quoting *Ji Sun Jennifer Kim v Goldberg, Weprin, Finkel, Goldstein, LLP*, 120 AD3d 18, 26 [1st Dept 2014]; *see e.g. Pitter-Green v NYU Langone Med. Ctr.*, 223 AD3d 576, 579 [1st Dept 2024] ["plaintiff has not shown how the alleged offensive remark or purportedly discriminatory conduct indicative of a hostile work environment amount to more than 'petty slights or trivial inconveniences' that would demonstrate that she was treated less well than other employees because of her protected characteristics"] [citation omitted]). As such, "mere personality conflicts" will not suffice to establish a hostile work environment (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 309 [2004]). "At the summary judgment stage, judgment should normally be denied to a defendant if there exist triable issues of fact as to whether such conduct occurred" (*Williams*, 61 AD3d at 79).

Plaintiff's hostile work environment claims under the NYCHRL must be dismissed because she fails to present any evidence that any Campaign workers ever treated her less favorably than other employees because of her gender, beyond her own speculative assertions (*see e.g. Ellison v Chartis Claims, Inc.*, 178 AD3d 665, 669 [2d Dept 2019] [affirming dismissal of race discrimination claim under the NYCHRL because "(t)he plaintiff offered nothing but speculation that any of the defendants' challenged actions were motivated, even in part, by unlawful discrimination or retaliation, and such speculation is insufficient to defeat summary judgment"]; *Suri v Grey Global Group, Inc.*, 164 AD3d 108, 135 [1st Dept 2018] [rejecting plaintiff's "speculative and conclusory" assertion that she was denied a promotion for discriminatory reasons]; *see generally Dickerson v Health Mgt. Corp. of Am.*, 21 AD3d 326, 329 [1st Dept 2005] ["Conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment"]).

Here, plaintiff's assertions of harassment pertain primarily to her former supervisor, Camilo Sandoval, who plaintiff reported to for less than two weeks (plaintiff's dep, at 113). However, these assertions consist of nothing more than alleged petty and trivial conduct on the part of Mr. Sandoval, which plaintiff merely speculates was related to her gender. For instance, plaintiff asserts that, soon after she was promoted out of Mr. Sandoval's department, Mr. Sandoval asked plaintiff's direct report, Ron Wilson, the following question in plaintiff's presence: "why are you letting your sheep wander?" (*id.* at 73- 74). Plaintiff further asserts that Mr. Sandoval also told her: "I hired you and I can fire you" (*id.* at 73-74, 98-100). Neither of these remarks are

101616/2017 DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No. 014 015

Page 12 of 20

[* 12]

gender-based on their face and, even if they were, they are not actionable, as a reasonable person would consider them nothing more than petty slights and trivial inconveniences (*see e.g. Edun v Envirosell, Inc.*, 2019 NY Misc LEXIS 2491, * 17-18 [Sup Ct, NY County 2019] [dismissing hostile work environment claims under the NYCHRL, finding that references to plaintiff as a "rookie" and "lady;" asking plaintiff whether she was "going to join a terrorist organization;" and asking plaintiff whether she was sending money to her parents in Mauritius so they can "keep coconuts on the table" were "petty slights" and "stray remarks"]; *Buchwald v Silverman Shin & Bryne PLLC*, Index No. 155828/2013 [Sup Ct, NY County, July 20, 2016], *affd* 149 AD3d 560 [1st Dept 2017] [affirming dismissal of hostile work environment claim under the NYCHRL, deeming supervisor's repeated references to plaintiff as a "nut," "nutjob," and "lunatic" over a five-month period to be "petty slights"]).

Plaintiff also asserts that, after her promotion, Mr. Sandoval "laid down" on a couch "with his crouch pointed towards [her]" (plaintiff's dep, at 96-98). However, plaintiff admits that Mr. Sandoval was not in a "sexual position" (*id.*), and acknowledges that Mr. Sandoval did not make any sexually inappropriate comments to her while he was on the couch (or at any other time during her employment with the Campaign) (*id.*). Accordingly, there is no evidence to support plaintiff's speculative assertions that Mr. Sandoval's conduct was gender-based in any way, and, even it was, it was also far too trivial to constitute a hostile work environment as a matter of law (*see e.g. Adams v City of New York*, 837 F Supp 2d 108, 128–29 [ED NY 2011] [female correction officer's claim that her male supervisor invited her into his office while he was shirtless and with his pants unzipped was "boorish and offensive," but too trivial and petty to constitute a hostile work environment under the NYCHRL]; *Magnoni v Smith & Laquercia, LLP*, 701 F Supp 2d 497, 506 [SD NY 2010] [plaintiff could not sustain sexual harassment claim under the NYCHRL where her supervisor "(told her) a crude anecdote from his sex life with another woman, and occasionally refer(red) to (plaintiff) as voluptuous and knock(ed) her knee"]), *affd* 483 Fed Appx 613 [2d Cir 2012]).

Plaintiff also asserts that Stephen Miller made a "condescending" comment to her while she was sitting at a table on an airplane, namely, that she was not permitted to sit at the table because it was a "workspace" (plaintiff's dep, at 102-106). However, plaintiff admits that she does not know why Mr. Miller made this comment to her, nor could she explain how this comment was directed towards her gender, especially considering that the comment was only directed to her even though she was sitting next to two other women at the time (*id.*). Moreover, this petty and trivial comment is also non-actionable (*see Edun v Envirosell, Inc.*, 2019 NY Misc LEXIS 2491, at * 17-18; *Buchwald v Silverman Shin & Bryne PLLC*, Index No. 155828/2013).

Plaintiff's speculative assertions of gender-based animus on the part of Mr. Sandoval are further undermined by her own admissions. For example: (1) plaintiff's assertion that Mr. Sandoval harassed her during her interview because of her gender is refuted by her admission that she has no idea how Mr. Sandoval treated men during their interviews (*see* plaintiff's dep, at 44, 50; (2) plaintiff's assertion that Mr. Sandoval harassed her with work tasks because of her gender is refuted by her admissions that she has no idea how Mr. Sandoval treated her male colleagues, and that Mr. Sandoval treated her coworker Elizabeth Pipko with "a lot of respect" (*see id.* at 50, 67, 74-75). Plaintiff also admits that she believed Mr. Sandoval's purported conduct towards her was because of his "insane jealousy" about her promotion (*see id.* at 85-89, 152). As such, this

101616/2017  DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No. 014 015

Page 13 of 20

was clearly not "gender discrimination" (*see e.g. Ramirez v Michael Cetta Inc.*, 2020 WL 5910551, * 10, 2020 US Dist. LEXIS 180619, * 28 [SD NY 2020) ("[f]urther hindering plaintiff's ability to prove that (harasser's) facially sex-neutral conduct was motivated by a gender-based discriminatory intent is plaintiff's admission that her only female coworker is not subject to the same time of alleged mistreatment and harassment from (the harasser)"; *see also Pitter-Green.*, 223 AD3d at 578 [granting employer's summary judgment motion on ground that plaintiff failed to "demonstrate that she was treated less well than other employees because of her protected characteristics"]; *Batilo v Mary Manning Walsh Nursing Home Co., Inc.*, 2018 NY Misc LEXIS 4964, * 34 [Sup Ct, NY County 2018] [dismissing discrimination claims under the NYCHRL, finding that plaintiff failed to raise a "triable issue of fact that she was treated less well than similarly situated employees outside of her protected class"]).

Plaintiff also relies upon an email in which Mr. Sandoval privately referred to plaintiff as a "bitch" who was "out of control" (*see* 10/9/16 email from Sandoval to Miller [NYSCEF Doc No. 388]), to show that all of Mr. Sandoval's other gender-neutral conduct must have been motivated by gender-based animus. However, this statement cannot support a hostile work environment claim as a matter of law because plaintiff admits that she was not even aware of the statement until several years after she stopped working for the Campaign (plaintiff's dep, at 77-78; *see e.g. Perez v City of New York*, 2020 WL 1272530, * 18, n 9, 2020 US Dist LEXIS 46906, * 39, n 9 [SD NY 2020] [because "there is no evidence that [internal] memorandum was ever shown to Perez," "(t)his letter therefore cannot support a hostile work environment claim"; *Thomas v New York City Health & Hosps. Corp.*, 2004 WL 1962074, * 12, 2004 US Dist LEXIS 17694, * 40 [SD NY 2004] ["there must be evidence that the employee knew about the acts if a hostile work environment claim is to survive summary judgment"]). In any event, this statement is not actionable, as Mr. Sandoval was only privately expressing his frustration regarding plaintiff's behavior with another colleague (*see* plaintiff's dep, at 254-255; *see e.g. Braunstein v Sahara Plaza, LLC*, 2022 WL 17480962, * 2, 2022 US App LEXIS 33635, * 3-4 [2d Cir 2022] [dismissing hostile work environment claim, reasoning that "(u)nder our precedent, use of the word 'bitch,' by itself, 'does not automatically command an inference of gender-based hostility' ... 'we cannot say that use of the word 'bitch' always and in every context has that meaning or that its usage need not be viewed in context'"] [citations omitted]; *Silberfeld v ABC Carpet Co., Inc.*, 2010 NY Misc. LEXIS 1703, * 17 [Sup Ct, NY County ] ["the term 'bitch' has been held not to have a sexual connotation in circumstances very similar to those in this case, in which the evidence suggests that hostility arose out of a personality conflict between coworkers"], citing *LaMarco v New York State Nurses Assn*, 118 F Supp 2d 310, 317 [ND NY ] [use of "bitch," with other gender-neutral offensive conduct, is not enough to show gender-based hostility]).

**Retaliation**

**1. Employment Retaliation**

In her cause of action for employment retaliation, plaintiff alleges that when she reported Mr. Sandoval's behavior, "the campaign retaliated against Denson by severely diminishing the conditions and scope of her employment and preventing her from career advancement" (amended complaint, ¶ 5; *see also id.*, ¶¶ 25-28).

101616/2017  DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No.  014 015

Page 14 of 20

14 of 20

Under the NYCHRL, it is unlawful to retaliate against an employee for opposing discriminatory practices (Administrative Code § 8-107 [7] *see Nezaj v PS450 Bar & Rest.*, 719 F Supp 3d 318, 330 [SD NY 2024]). To establish a claim for retaliation under the NYCHRL, a complainant must show that (1) she engaged in a protected activity, (2) the employer was aware that she participated in such activity, (3) the employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct (*see Sanderson–Burgess v City of New York*, 173 AD3d 1233, 1235–1236 [2d Dept 2019]; *accord Parham*, 84 Misc 3d 1204[A], 2024 NY Slip Op 51360[U], at * 7). "Protected activity" refers to "actions taken to protest or oppose statutorily prohibited discrimination" (*Aspilaire v Wyeth Pharmaceuticals, Inc.*, 612 F Supp 2d 289, 308 [SD NY 2009]; *Ramos v Metro-North Commuter R.R.*, 2020 WL 2041986, 2020 NY Misc LEXIS 1666 [Sup Ct, NY County 2020]).

"'To establish its entitlement to summary judgment in a retaliation case, a defendant must demonstrate that the plaintiff cannot make out a prima facie claim of retaliation or, having offered legitimate, nonretaliatory reasons for the challenged actions, that there exists no triable issue of fact as to whether the defendant's explanations were pretextual'" (*Reichman*, 179 AD3d at 1119–20 [citation omitted]; *see Forrest*, 3 NY3d at 305). Where a defendant produces "evidence that justifies [his or her] allegedly retaliatory conduct on permissible grounds ... [t]he plaintiff must either counter the defendant's evidence by producing evidence that the reasons put forth by the defendant were merely a pretext, or show that, regardless of any legitimate motivations the defendant may have had, the defendant was motivated at least in part by an impermissible motive" (*Reichman*, 179 AD3d at 1120 [citation omitted]; *see also Delrio v City of New York*, 91 AD3d 900, 902 [2d Dept 2012]).

This court finds that the Campaign has met its initial burden of demonstrating that the plaintiff cannot make out a prima facie case of unlawful retaliation. First, plaintiff does not assert that the Campaign unlawfully terminated her employment, because it is undisputed that plaintiff's employment with the Campaign came to its natural end on November 10, 2016—i.e., two days after the 2016 presidential election on November 8, 2016—along with the vast majority of the Campaign's workforce (plaintiff's dep, at 351-353; Castillo dep [NYSCEF Doc No. 384], at 216). Indeed, plaintiff admits that she did not have an expectation of continuing to work for the Campaign following the election (*see* plaintiff's dep, at 353).

Moreover, plaintiff fails to present any evidence, other than speculative assumptions, that the Campaign retaliated against her during her employment for any purported protected complaints (*see* plaintiff's dep, at 270-271 [testifying that she had a "reasonable suspicion," but no "factual basis to verify [it]" that Mr. Sandoval "was behind," the theft of her computer charger, and the hacking of her computer account]; *id.* at 323 [testifying that she "believed" that she was not permitted to participate in the Women's Tour, a campaign event, "for retaliatory reasons," and because Ms. Castellano and Jeff DeWitt "determined that [she was] going to be in a certain, very limited position," but also that this was an "assumption," and she didn't know "for sure"]; *id.* at 326 [testifying that the Campaign's decision to not allow her to work in Nevada was "part of the overall retaliatory acts of The Campaign," but admitting that this was her "belief," and that the Campaign never told her that she wasn't allowed to work there because she made complaints, and

101616/2017  DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No. 014 015

Page 15 of 20

[* 15]

that she didn't know whether or not the Campaign had "a legitimate business reason for not sending [her] to Nevada"]).

Such speculative assertions are insufficient to defeat summary judgment (*see e.g. Ellison*, 178 AD3d at 668 ["The plaintiff offered nothing but speculation that any of the defendants' challenged actions were motivated, even in part, by unlawful discrimination or retaliation, and such speculation is insufficient to defeat summary judgment"]; *Cobb v Ellab Inc.*, 2024 WL 1963430, * 12 [ND NY 2024] ["Plaintiff has offered nothing but speculation that Defendant's challenged action was motivated, even in part, by unlawful discrimination or retaliation, 'and such speculation is insufficient to defeat summary judgment'"] [citation omitted]; *see also Ciulla v Xerox Corp.*, 70 Misc 3d 1205[A], 2021 NY Slip Op 50007[U], * 12 [Sup Ct, NY County 2021] ["Plaintiff's unsupported belief that his termination was motivated by disability is based on nothing more than speculation" which is "'insufficient to defeat summary judgment'"] [citation omitted]).

Plaintiff also asserts in general terms that the Campaign retaliated against her by (1) reassigning one of its own Twitter accounts to another employee, (2) trying to "steal" her personal laptop, and (3) denying her access to a voter database (which she asserts was important for her job duties) (*see* plaintiff's dep, at; 250, 265, 279-280). However, other than simply labeling this purported conduct as "retaliatory," she fails to identify any facts attributing this alleged conduct to any protected complaint made by her. Indeed, to the contrary, she states that the alleged conduct was carried out by certain Campaign workers simply because they were "jealous" of her promotion out of the Campaign's data department (i.e., not because of any protected conduct on her part) (*see id.* at 85-89, 152). Plaintiff similarly makes a conclusory assertion that she was "retaliated" against by being asked to travel to the West Coast to work for approximately two weeks, yet she admits that she agreed to this travel arrangement (*see* plaintiff's dep, at 207-210, 285).

These conclusory assertions are insufficient to demonstrate a causal connection between the protected conduct and the allegedly adverse employment action, which must be shown to demonstrate a prima case of retaliation (*see Baldwin v Cablevision Sys. Corp.*, 65 AD3d 961, 967 [1st Dept 2009] [affirming dismissal of NYCHRL retaliation claim]; *see also Shapiro v State*, 217 AD3d 700, 702 [2d Dept 2023] ["Here, the defendants met their initial burden of demonstrating that the plaintiff could not make out a prima facie case of unlawful retaliation by showing that the challenged actions were not causally connected to any protected activity engaged in by the plaintiff"]; *Ortiz v Equinox Holdings, Inc.*, 2023 NY Misc LEXIS 2909, * 17-18 [Sup Ct, NY County 2023] [dismissing NYCHRL retaliation claim, stating that "there is just nothing in the record on which a reasonable juror could find that Equinox retaliated against plaintiff for making the complaints"]).

Moreover, most of challenged conduct constitutes nothing more than trivial matters, which are insufficient as a matter of law to meet the retaliation requirements under the NYCHRL (*see e.g. Reichman*, 179 AD3d at 1120 [affirming dismissal of retaliation claim, finding that defendants' conduct in giving plaintiff an unfavorable performance review and transferring him to another firehouse were not "reasonably likely to deter a person from engaging in protected activity"]; *Leader v City of New York*, 2020 NY Misc LEXIS 1255, * 39 [Sup Ct, NY County March 16, 2020] [dismissing retaliation claim, finding that defendants' alleged failure to investigate plaintiff's complaint in good faith and denying plaintiff access to their investigatory

101616/2017  DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No. 014 015

Page 16 of 20

file were not reasonably likely to deter a person from engaging in protected activity]; *see also Etienne v MTA New York City Tr. Auth.*, 223 AD3d 612, [1st Dept 2024] [granting summary judgment on retaliation claim because "plaintiff failed to plead sufficient facts as to why [the challenged conduct] would dissuade a reasonable employee from complaining about discrimination, or why it constituted anything more than a trivial harm"]).

For these reasons, plaintiff's employment retaliation claim under the NYCHRL fails a matter of law and must be dismissed.

## 2. Post Employment Retaliation Claim

Plaintiff moves for partial summary judgment on her amended supplemental complaint, which is premised on the assertion that the Campaign's decision to initiate a prior arbitration against plaintiff was motivated by retaliatory intent. Plaintiff argues that Mr. Glassner's deposition, which was taken after the First Department's decision, confirms every element of her post-employment retaliation claim, and that the Campaign's purported legitimate non-retaliatory reason for bringing a $1.5 million arbitration against her based on a supposed "good faith belief" that she had violated the NDA is undeniably false, and a pretext for unlawful retaliation as a matter of law.

However, plaintiff is precluded, by both the successive summary judgment rule and the doctrine of the law of the case, from bringing this third motion for summary judgment on her supplemental amended complaint. Plaintiff's arguments supporting her post-employment retaliation claim have already been soundly rejected by this court and the First Department, both of which found that she failed to proffer any evidence suggesting that the Campaign's decision to commence an arbitration against her was pretextual or motivated by retaliatory intent. Indeed, the First Department, in upholding this court's prior decision denying her second motion, unequivocally held that the Campaign had proffered "a legitimate basis for compelling arbitration, i.e., that it in good faith believed plaintiff violated the NDA by making factual allegations that exceeded the facts necessary to state a viable claim," and that plaintiff "failed to submit evidence showing that this proffered reason was pretextual" (*Denson v Donald J. Trump for President, Inc.*, 206 AD3d at 512] [internal citations omitted]).

It is well-established that "[s]uccessive motions for summary judgment should not be entertained without a showing of newly discovered evidence or other sufficient justification" (*Jones v 636 Holding Corp.*, 73 AD3d 409, 409 [1st Dept 2010], citing *Phoenix Four v Albertini*, 245 AD2d 166, 166 [1st Dept 1997]; *see also Ferolito v Vultaggio*, 36 Misc 3d 1227[A], 2012 NY Slip Op 51523[U], * 4-5 [Sup Ct, NY County 2012] ["New York law has a 'strong policy against allowing successive motions for summary judgment'"] [citation omitted]).

"This is particularly true where the motion is based on legal grounds and factual assertions that were or could have been raised in an earlier motion" (*Ferolito*, 36 Misc 3d 1227[A], 2012 NY Slip Op 51523[U], at * 5). Accordingly, "[s]uccessive motions for summary judgment should not be entertained in the absence of good cause, such as a showing of newly discovered evidence" (*Deutsche Bank Natl. Tr. Co. v Elshiekh*, 179 AD3d 1017, 1020 [2d Dept 2020]). Indeed, "[a] party seeking summary judgment should anticipate having to lay bare its proof and should not

101616/2017 DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No. 014 015

Page 17 of 20

[* 17]

expect that it will readily be granted a second or third chance," because "[s]uccessive motions for the same relief burden the courts and contribute to the delay and cost of litigation" (*id.* at 1020).

Plaintiff's third summary judgment motion on her post-employment retaliation claim is the exact same motion that was previously denied by this court, and affirmed by the First Department. In her new summary judgment motion, plaintiff fails to submit any newly discovered evidence that the Campaign retaliated against her in bringing the arbitration. As courts have repeatedly stated, "'evidence is not newly discovered simply because it was not submitted on the prior motion; rather, the evidence must not have been available to the party at the time it made its initial motion and could not have been established through alternate evidentiary means'" (*Emtec Consultants, Professional Engrs., P.L.L.C. v Elias Props. Levittown, LLC*, 2022 NY Misc LEXIS 4900, * 4 [Sup Ct, Nassau County 2022], quoting *P.J. 37 Food Corp. v George Doulaveris & Son, Inc.*, 189 AD3d 858, 859 [2d Dept 2020]; *see generally Matter of Ulises R. v Elizabeth H.T.*, 217 AD3d 639, 641 [1st Dept 2023] ["regardless of which standard is applied to the motion, the court correctly determined that the father failed to demonstrate that the newly discovered evidence could not, with due diligence, have been discovered earlier"]).

Here, plaintiff's attempt to justify the filing of a second summary judgment motion on the same claim is based solely on the fact that she deposed Mr. Glassner on January 9, 2023 (i.e., six months after the First Department affirmed this court's denial of plaintiff's prior motion). However, Mr. Glassner's deposition testimony is not "new evidence" under the law, as plaintiff was fully aware that Mr. Glassner was a relevant witness before she filed her first motion in April 2021, as well as before she filed her second motion in June 2021, but she voluntarily elected to file those motions before taking his (or any other) depositions (*see e.g. Genesis Merch. v Gilbride*, 2023 NY Misc LEXIS 5424, * 7 [Sup t, NY County 2023] [denying successive summary judgment and rejecting plaintiffs' assertion that further deposition testimony and expert materials constituted "new" evidence, finding that "plaintiffs made a strategic decision to move for summary judgment while discovery was ongoing and before any expert testimony was obtained, though that testimony was clearly available had plaintiffs deigned to obtain it before moving"]; *313 43rd St. Realty, LLC v TMS Enters., LP*, 215 AD3d 901, 904 [2d Dept 2023] ["although the deposition testimony of Terry Lazar, a principal of the sellers, was not elicited until after this Court's decision and order holding that the buyer's previous cross-motion for summary judgment should have been denied, the buyer failed to demonstrate that Lazar's testimony established facts that were not available to the buyer at the time it made its previous cross-motion for summary judgment and which could not have been established through alternative evidentiary means"], citing *Vinar v Litman*, 110 AD3d 867, 869 [2d Dept 2013] [deposition testimony elicited after the denial of a first summary judgment motion could not be considered "new" evidence to establish facts that could have been established at the time of the initial motion]).

As such, this third motion for summary judgment is denied (*see Demble v Acton Carting Environmental Servs., Inc.*, 211 AD3d 508, 508 [1st Dept 2022] ["Supreme Court correctly held that the successive summary judgment motions were improper"]; *Matter of CUCS HDFC v Aymes*, 191 AD3d 522, 523 [1st Dept 2021] ["the court properly denied as improper successive summary judgment motions respondent's motions in sequence 5 and 6 for summary judgment on his counterclaim based on his contention that petitioners' building violates the Zoning Resolution of the City of New York, since respondent had previously sought summary judgment on his claim

101616/2017 DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No. 014 015

Page 18 of 20

that petitioners' building violates the Zoning Resolution"]; *Landau, P.C. v Goldstein*, 76 Misc 3d 138[A], 2022 NY Slip Op 51002[U], \*\* 1 [App Term, 1ˢᵗ Dept] ["defendant's motion violated the rule against successive summary judgment motions, since he previously sought summary judgment ... on the same grounds without 'showing ... newly discovered evidence or other sufficient justification'"] [citation omitted]).

Plaintiff's third summary judgment is also precluded by the doctrine of the law of the case. The law of the case doctrine "is a rule of practice premised upon a sound policy that once an issue is judicially determined, further litigation of that issue should be precluded in a particular case" (*Matter of Part 60 RMBS Put–Back Litig.*, 195 AD3d 40, 47 [1ˢᵗ Dept 2021]; *accord Teshabaeva v Family Home Care Servs. of Brooklyn & Queens, Inc.*, 227 AD3d 487, 487 [1ˢᵗ Dept 2024]). "It applies to prevent 'the parties or those in privity' from relitigating 'an issue decided in an ongoing action where there previously was a full and fair opportunity to address the issue'" (*Aspen Specialty Ins. Co. v RLI Ins. Co., Inc.*, 194 AD3d 206, 212 [1ˢᵗ Dept 2021] [citation omitted]). Moreover, "[a]n appellate court's resolution of an issue on a prior appeal constitutes the law of the case and is binding on the Supreme Court, as well as on the appellate court and operates to foreclose re-examination of the question absent a showing of subsequent evidence or change of law" (*Carmona v Mathisson*, 92 AD3d 492, 492–493 [1ˢᵗ Dept 2012] [citation, internal quotation marks, ellipsis and brackets omitted]).

Given the prior orders in this court which denied plaintiff's identical summary judgment motion, as well as the Appellate Division, First Department's affirmance of this court's order, plaintiff's third bite at the apple is precluded (*see Mezinev v Tashybekova*, 226 AD3d 570, 571 [1ˢᵗ Dept 2024]).

Moreover, plaintiff has failed to present any "subsequent evidence" that would warrant a different result (*see NAMA Holdings, LLC v Greenberg Traurig LLP*, 92 AD3d 614, 614 [1st Dept 2012]). In his affidavit, Mr. Glassner explained that "maintaining the confidentiality of certain private and sensitive information and enforcing its contractual rights was always very important to the Campaign," and that plaintiff "breached her confidentiality and non-disparagement obligations by pleading certain sensationalist allegations that the Campaign in good faith believed far exceeded what she was required to allege in order to state viable lawsuit claims" (Glassner dep, ¶¶ 2-3). Mr. Glassner alleged that, as such, "[t]he Campaign initiated the arbitration against Ms. Denson because it had a good faith belief that she had breached her agreement and believed it was important to the future success of the Campaign that it enforce its contractual confidentiality and non-disparagement rights under the agreement" (*id.*, ¶ 6). Both this court and the First Department found that Mr. Glassner's affidavit testimony was sufficient to satisfy the Campaign's burden of articulating legitimate, non-retaliatory reasons for its conduct.

In his deposition testimony, Mr. Glassner similarly testified that the Campaign decided to commence the arbitration because it believed that plaintiff had purposefully pleaded sensationalist allegations in her complaint for media consumption to embarrass the Campaign and make it appear as if it was disorganized, chaotic, and unprofessional (*see* Glassner dep, at 27-28, 32-35, 41, 49). Mr. Glassner further testified that the Campaign believed that plaintiff had violated her confidentiality and non-disparagement obligations by unnecessarily disclosing information that had no bearing on her discrimination claims, such as skewed information pertaining to internal and

**101616/2017 DENSON, JESSICA vs. TRUMP, DONALD J. FOR**
**Motion No. 014 015**

Page 19 of 20

otherwise private Campaign operations, communications, hiring and personnel decisions, and even purported Secret Service activity (*see id.* at 48-69).

Accordingly, in the time since the First Department's decision, plaintiff has failed to adduce any evidence undermining the Campaign's "legitimate basis" for initiating the arbitration or showing that this legitimate basis was pretextual or motivated even in part by retaliatory animus (*see e.g. Suri*, 164 AD3d at 129 [once a legitimate basis has been articulated, the burden shifts to plaintiff to "counter (this) evidence by producing pretext evidence (or otherwise), or show that, regardless of any legitimate motivations the defendant may have had, the defendant was motivated at least in part by (retaliation)"]; *Bennett v Health Mgt. Syst., Inc.*, 92 AD3d 29, 39 [1st Dept 2011] [once the defendant has articulated a legitimate, non-retaliatory reason for its conduct, "the plaintiff may not stand silent"]). As such, her post-employment retaliation claim fails as a matter of law and must be dismissed.

Accordingly, it is

ORDERED that defendant's motion for summary judgment (motion sequence no. 014) is granted, plaintiff's motion for summary judgment (motion sequence no. 015) is denied, and both the amended complaint and the amended supplemental complaint are dismissed with costs and disbursements to defendant as taxed by the Clerk upon the submission of an appropriate bills of costs; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly.

| 2/14/2025 | | | |
| --- | --- | --- | --- |
| DATE | | FRANCIS A. KAHN, III, A.J.S.C. | |

HON. FRANCIS A. KAHN III
J.S.C.

| CHECK ONE: | X CASE DISPOSED | | NON-FINAL DISPOSITION |
| --- | --- | --- | --- |
| | GRANTED | DENIED | X GRANTED IN PART | OTHER |
| APPLICATION: | SETTLE ORDER | | SUBMIT ORDER |
| CHECK IF APPROPRIATE: | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

101616/2017 DENSON, JESSICA vs. TRUMP, DONALD J. FOR
Motion No. 014 015

Page 20 of 20

[* 20]